EXHIBIT 29

# LAW OFFICES OF LARRY ZERNER
TRADEMARK, COPYRIGHT AND INTELLECTUAL PROPERTY LAW

1801 CENTURY PARK EAST
SUITE 2400
LOS ANGELES, CA 90067-2326

PHONE: 310.773.3623
FAX: 310.388.5624
E-MAIL: Larry@ZernerLaw.com
WEB: www.ZernerLaw.com

October 9, 2014

<u>Via U.S. Mail and Email to Jonathan.Karp@simonandschuster.com</u>

Mr. Jonathan Karp
Simon & Schuster, Inc.
1230 Avenue of the Americas
New York, NY 10020

Dear Mr. Karp:

      I am writing to you on behalf of my client, Efraim Diveroli on a matter of some urgency. I understand that you are currently editing Guy Lawson's manuscript about Mr. Diveroli, titled *Arms and the Dudes: How Three Stoners from Miami Beach Became the Most Unlikely Gunrunners in History.* Mr. Diveroli is extremely concerned that the manuscript will defame him, or at the very least, have serious misstatements of fact, considering that Mr. Lawson has never spoken to my client and that Mr. Lawson's main source for the information in the book was David Packouz, a person who was only marginally involved in Mr. Diveroli's business.

      Because Mr. Lawson was unable to speak to my client, in order to sell the story to Rolling Stone (and apparently to you) he inflated Mr. Packouz into a "partner" in AEY, a position he never held. Mr. Packouz was not a "partner" in AEY, nor was he an officer or director of the company. Mr. Packouz was merely a friend of Mr. Diveroli's who was brought on as a non-salaried (commission only) part-time employee to help my client with his business. Mr. Packouz was not privy to the inner workings of my client's business. He is merely a small player. Similarly, Alex Podrizki was merely an employee of AEY and was only peripherally privy to details of the business. Yet it appears that Simon & Schuster is planning on publishing a book that has huge holes in the research required to adequately verify the facts in the book.

      I'm sure that Mr. Lawson understands the problems with his manuscript based on the literally hundreds of emails he sent to Mr. Diveroli over the past few years containing hundreds and hundreds of questions, and asking for an interview or for more information about the events that occurred in the book. Mr. Diveroli has been unable to discuss the events that led to his imprisonment based on the advice of his attorneys. However, on September 4th Ross Reback, Mr. Diveroli's business partner called Mr. Lawson on Mr. Diveroli's behalf and told Mr. Lawson that Mr. Diveroli was willing to review the manuscript for mistakes and factual errors and point

Mr. Jonathan Karp
October 9, 2014
Page 2

them out to Mr. Lawson. Mr. Lawson refused my client's offer on the grounds that the manuscript belonged to Simon & Schuster and he did not have authority to provide Mr. Diveroli with the manuscript. Further and even more disturbing, during that conversation Mr. Lawson stated to Mr. Reback "The last thing I need is for my book to come out and for Efraim to speak out publicly and trash it for being wrong." Obviously, Mr. Lawson is well aware of the severe misstatements and inaccuracies contained in his storytelling.

Accordingly, I am writing to you to inquire as to whether Simon & Schuster is willing to allow Mr. Diveroli an opportunity to review the manuscript for factual errors prior to its publication. If you are worried about the manuscript leaking, I am sure we could come to an arrangement where that would not be an issue. But it is not in the best interests of Mr. Lawson, Simon & Schuster or Mr. Diveroli for you to publish an inaccurate, error-filled account of my client's activities.

Please let me point out that Simon & Schuster's marketing for the book already contains errors. Despite the fact that the subtitle of the book is *How <u>Three</u> Stoners from Miami Beach Became the Most Unlikely Gunrunners in History*, on Amazon and Barnes & Noble the description of the book states that the book is, "[T]he page-turning, inside account of how <u>two</u> kids from Florida became big-time weapons traders - and how the US government turned on them." When Simon & Schuster is unable to describe the book in a way that doesn't contradict its title, it makes it very hard for Mr. Diveroli to believe that the more important detailed information concerning his life will be presented in an accurate manner.

Please let me know at your earliest convenience whether you will allow Mr. Diveroli to review the manuscript and avoid a potentially embarrassing and possibly libelous situation for Simon & Schuster and Mr. Lawson.

Thank you for your kind consideration.

Very truly yours,

Larry Zerner